SOLOMON WRIGHT *vs.* JOSEPH PARKER and WM. B. SHERMAN.—*IN CHANCERY.*

*Dictum*—Where a mortgage is conditioned for the payment of several notes, the mortgagee *may* assign the whole of his interest in the mortgaged premises to an assignee of *a part* of the notes, leaving no security in the land for a subsequent assignee of the other notes.

A. being possessed of *five* notes secured by mortgage, assigned *two* of them to B. and by deed, transferred and set over to him a corresponding portion of the mortgage, to hold to himself, &c. until B. should be paid and satisfied said notes.   And B. on his part, covenanted in the same instrument, under a penalty of $2000, at any time after said notes should be paid, with the interest and costs, if any, to give up to A. "all and singular all the residue and remainder, without let or hindrance, or molestation, peaceable possession of the premises."   A. afterwards assigned to C. *two other* of said notes, and transferred to him all his remaining interest in the mortgaged premises.—*Held,* that the assignment to B. was not such a contract as enabled him to hold the whole mortgaged premises as a security for the payment of the two notes so assigned to him ; but that as against C. he was entitled to a portion of the mortgaged premises, equal in value to the amount of the two notes, &c. and that C. was entitled to the residue ; and partition of the premises was ordered accordingly.

THE facts appearing in this case are succinctly stated in the following opinion of the Court, which was pronounced by

HUTCHINSON, Chancellor.   This cause has been heard upon the bill and answers, and the prominent facts disclosed, are these :   That *Parker,* on the 1st of April, A. D. 1818, was indebted to one *Thomas J. Mann,* in the sum of $2300, and gave him five notes for the same, payable in two, three, four, five and six years, with interest.   The four, first payable, were for $500 each, and the last for $300.   That *Parker,* at the same time, executed to *Mann* a mortgage deed of certain lands in Pownal, to secure the payment of these notes.   That *Mann,* by two several assignments, the last of which was on the 1st of April, A. D.

Bennington,
January,
1827.

Wright
vs.
Parker et al.

1820, assigned the two of said notes which were first payable, to the said *William B. Sherman*, and made also an assignment of a corresponding interest in the mortgage, the particulars of which will be noticed hereafter. That in May, 1821, *Sherman*, alone, brought his action of ejectment against *Parker* alone, and in December following, recovered judgment for the premises. That on motion by *Parker*, for time to redeem, execution was stayed till March 1st, 1823, and the sum, ascertained for him to pay on such redemption, was the amount of the two notes assigned to *Sherman*, with the interest and cost. *Parker* failing to redeem, *Sherman* prayed out his execution and took possession of the premises, which he yet retains. That after the recording of the assignments from *Mann* to *Sherman*, to wit, on the 23d of May, 1821, *Mann* assigned to the orator the two notes which last became payable, and which still remain unpaid, and transferred to him all the remaining interest of *Mann* in the mortgaged premises, by a deed, duly executed and recorded. Nothing is said about the note which was the third that became payable, hence it is presumed to have been paid by *Parker* to *Mann*.

Now, whether the orator is entitled to any, and what remedy, depends upon the nature and extent of the prior assignments from *Mann* to *Sherman* ; for if *Mann* chose to assign to *Sherman* all his interest in the mortgaged premises, as security for the payment of the two notes assigned to him, he had a right so to do; and in such case, nothing would remain for his after assignment to the orator to operate upon. The said assignments made by *Mann* to *Sherman*, and which were recorded in the town clerk's office, April 1st, 1820, are as follows, to wit :

"Pownal, Aug. 18, 1818.

Know all men by these presents, that for the consideration of $511,51, received of William B. Sherman, of Williamstown, &c. do convey, transfer, sell and set over to said Wm. B. Sherman, so much of the within mortgage deed as to hold, recover and collect the first mentioned note in the within, that out of the mortgage said first note which I have sold to said *Sherman* shall be made certain to said *Sherman*, or his heirs, assigns or administrators.                                  THOS. J. MANN. (L. S.)

In presence of    *Heman Scranton,*
                         *Peleg Hall.*

"Pownal, April 1, 1820.

Know all men by these presents, for the consideration of $500 received of *Wm. B. Sherman*, of, &c. do convey, transfer and set over to the said *Wm. B. Sherman*, so much of the within mortgage deed, to hold, recover and collect the note here above described, together with the lawful interest and cost, if any thereon should arise, *always meaning*, that the said *Sherman* hold to himself and heirs and assigns, or administrators, the full right to hold and recover *so much* of said *land* contained in the within mortgage deed, until he the said *Sherman* shall be paid and satisfied as above written. And *I the said Wm. B. Sherman* do hereby agree and bind myself and heirs, administrators and as-

*Bennington,*
*January,*
*1827.*

*Wright*
*vs.*
*Parker et al.*

signs, in the penal sum of $2000, at all times or at any time after the two assignments are complied with, and the same paid, with interest, and cost, if any should arise, to set over or give up to the said *Thomas J. Mann* all and singular all the residue and remainder, without let or hindrance, or molestatation, peaceable possession of the premises.      Thos. J. Mann,   (l. s.)

Wm. B. Sherman. (l. s.)

In presence of    *Benj. Edwards, jr.*
                          *Thos. Banister.*

The fair construction of these assignments is, that *Sherman* was to hold his portion of the land, and the rest remain a security for the payment of the other notes.   What that portion ought to be, would depend upon circumstances connected with the value of the premises.   If the premises are worth as much or more, than the debts due both to *Sherman* and the orator, the apportionment between them must be graduated by the amount of their respective claims.   But, if the premises are not of sufficient value to pay the claims of both, *Sherman's* claim must first be satisfied.

It is contended, however, by the defendant's counsel, that *Sherman* has a lien upon the whole mortgaged premises, for the actual payment, in money, of his whole demand upon the two notes assigned to him, and that the assignment of the notes is, of itself, such an assignment of the equitable interest of *Mann* in the premises, as to have such an effect.   To support this position, the 15*th of Mass. R.* is cited, to wit, *p.* 233, *Warden* vs. *Adams.*   But that case falls short of the point to be supported by it.   There was in that case, not only an assignment of the note, but a conveyance, by separate deed, of the whole mortgaged premises.   Had that been the case here, or if *Sherman* were, at all events, to have his money, and not land, the case would apply, and the result be the same here as there.   But each of these assignments of the mortgaged premises to *Sherman*, is particular, and transfers, not the whole, but so much as to secure each note assigned; and, had the whole stopped there, *Sherman* would have held upon the whole till he received his money. But the last assignment, containing the mutual contract of the two, and signed and sealed by both, adds a stipulation, (which spreads over the whole claim upon both notes) that *Sherman*, his heirs and assigns, shall have full right to hold and recover *so much of said land,* &c. until he shall be paid and satisfied as above written.   Stopping here, it would bear the construction contended for by the defendant.   But the writing proceeds with a stipulation, that *Sherman*, under a penalty of $2000, will, *at any time after the two assignments are complied with, with interest and cost, if any should arise,* set over and give up to *Mann* all and singular the residue and remainder, without let, hindrance or molestation, including the peaceable possession of the premises. It appears probable, that these parties understood that there was sufficient value in the mortgaged premises to secure what notes remained unpaid: and it is evident, that if *Parker* redeemed,

*Sherman*, would have his money, and interest and cost, and the assignment of the notes may have been a barter trade, and not reckoned as money between them. But whatever might be the inducement, the stipulation is, by a fair construction, that if *Parker* should fail to redeem, *Sherman* should keep land enough to pay himself, and give up the remainder to *Mann*. The orator having received from *Mann* all the title which remained in him after his assignment to *Sherman*, he is entitled to receive such residue.

*Bennington,*
*January,*
*1827.*
~~~~~
*Wright*
*vs.*
*Parker et al.*

The bill has been taken as confessed, with regard to *Parker*, and a decree of forclosure as to him, follows of course.

Commissioners must be appointed to appraise the mortgaged premises, and report a partition between the orator and *Sherman*. If they find the premises worth as much, or more, than the whole debts, they must report a division in proportion to the respective amounts of the claims, reckoning no interest upon *Sherman's* claim during the period in which he has held the possession. But if the premises are not of sufficient value to satisfy both claims, then the commissioners must report an apportionment to *Sherman* of a sufficient share of the premises to satisfy the whole of his claim, reckoning no interest after he took possession, and report the remainder as apportioned to the orator.

> The cause must be continued, for the commissioners to make report.

*Hiland Hall, S. H. Blackmer* and *Phinehas Smith,* solicitors for the orator.

*David Robinson, jr.* and *C. Sheldon,* for the defendant *Sherman.*